**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

CRIMINAL ACTION NO. 5:18-08-DCR

UNITED STATES OF AMERICA                                                     PLAINTIFF

V.        **UNITED STATES'S UNRESOLVED OBJECTIONS
              AND SENTENCING MEMORANDUM**

JESSE L. KESSLER                                                                      DEFENDANT

\* \* \* \* \*

Pursuant to the Court's Sentencing Order, the following memorandum outlines the United States's position on unresolved objections to the United States Probation Office's (USPO) Presentence Investigation Report (PSR). [R. 27: Court's Order.] As set forth more fully below, the material facts contained in the PSR were accurate and the advisory Guidelines range was properly calculated at 24 to 30 months. Based on the relevant 18 U.S.C. § 3553(a) factors, the United States recommends a sentence at the high end of the Guidelines range.

FACTUAL BACKGROUND

The Defendant was charged in a two-count indictment for cyberstalking (18 U.S.C. § 2261A(2)) and transmitting a threat in interstate commerce (18 U.S.C. § 875(c)). [R. 1: Indictment.] The Defendant pleaded guilty to the cyberstalking charge, admitting to the following set of facts:

> a. After the cessation of their romantic relationship in or around May or June of 2017, the Defendant communicated with E.G., her new boyfriend, and her father, using electronic communication services. These communications traveled from the Defendant's electronic devices located in California to their intended recipients in Kentucky. The electronic communication channels include email, phone call, and text message.

1

      b. Between June of 2017 and February of 2018, the Defendant's communications with E.G., her boyfriend, and her father became increasingly frequent, threatening, and intimidating. The Defendant admits that these communications were intended to harass E.G., her boyfriend, and her father.

      c. Through these communications, the Defendant in fact caused substantial emotional distress to E.G., her boyfriend, and her father.

[R. 26: Plea Agreement at Page ID # 70-71.]

The PSR made several factual findings before recommending a Guidelines offense calculation of 17 (base offense level 18, two-point enhancement for pattern of activity, and three-point reduction for acceptance of responsibility). [PSR at ¶¶ 17-25.] With a Criminal History Category of I, the resulting Guidelines range is 24 to 30 months' incarceration. [*Id.* at ¶ 29-30, 59.] The Defendant now objects to some facts found by the USPO and the recommendation to apply a two-point pattern-of-activity enhancement. [PSR at pp. 16-17.]

UNRESOLVED FACTUAL OBJECTIONS TO THE PSR

The Defendant objects to eight facts found by the USPO. [*Id.*] The United States will only address two of these objections, as the others are largely immaterial to the substance of this case. First, the Defendant objects to the statement that he located E.G.'s employer's email address and sent emails to her employee email account. He contends that he had already possessed this email address and did not send any threatening emails to E.G.'s business email account. [*Id.* at pp. 16].

According to E.G., she never provided the Defendant with her business email address, just where she worked. Moreover, the email sent to her business email address was harassing and threatening in nature. To the uninitiated, an email with a link to a gaming site may seem innocuous, but the link actually directed to a webpage that showed E.G's old gaming profile, with a subject line indicating her new gaming profile. To E.G., this showed that the Defendant knew what she was doing and was monitoring her online activity. Part of the harassing nature of the Defendant's

conduct was the reminder that the Defendant could find her online wherever she went. Sending this to her work email amplified her feeling that she could not escape his watchful eye.

Second, the Defendant contests the finding that between June of 2017 and February of 2018, the Defendant's communications became increasingly more frequent, threatening, and intimidating, because he asserts that the threatening activity became less frequent in the latter parts of 2017 into 2018. [PSR at pp. 17.] As the USPO points out, this is language taken directly from the Plea Agreement, and is supported by the communications obtained in the course of the investigation. The following is a summary of communications sent by the Defendant during the latter parts of 2017 and into 2018:

| Recipient | Date | Type of Communication | Content |
|---|---|---|---|
| E.G. | 12/1/17 | Email | "You've wasted all your chances. Strap the fuck in betrayer. It's going to be a rough ride." |
| E.G. | 12/4/17 | Work Email | Link to her old gaming profile, but subject line is her new gaming profile - shows he has found her online. |
| E.G. | 12/5/17 | Email | Subject line: "Choose your fate"; "It's time to choose once and for all… I'm going quiet again so you can't make any plans but that doesn't mean I'm gone; I never was" |
| E.G.'s stepmother | 12/5/17 | Text message | "I know you told her that doing this would be best. What a God awful mistake" |
| E.G. | 12/6/17 | Email | "If you can't make up your mind I'm going to have to take from him what he took from me" |
| E.G. | 12/7/17 | Email | Subject line: "Times up"; "Let the fun begin. Goodbye [E.G.]  Goodbye [J.]" |
| E.G. | 12/7/17 | Email | "Still think this is a game?" |
| E.G. | 12/13/17 | Email | "Enjoying this yet?" |
| E.G.'s friend | 12/14/17 | Facebook Messages | "Debts have to be paid"; "Bet you guys think I'm just unhinged and winging this"; "Do you know what social engineering is?"; "All it takes is a scrap here and a scrap there and all of a sudden you see the whole panorama"; "You guys aren't helping her … I'll make sure I let her know that when I see her"; "some decisions are final"; "Like I said, it's not up to her anymore"; "You'll all know in time, I assure you"; "the hard work is already over, I'm just coasting until January" |

| | | | |
|---|---|---|---|
| E.G. | 12/20/17 | Email | "You sacrificed my dreams so that you could play video games with your friends. Now you're going to answer for it and they can't help you" |
| E.G. | 12/21/17 | Email | "How long do you think it took me to find your new name?" |
| E.G. | 12/21/17 | Email | "Enjoy the next 30 days. My guy has advised me to lay low. I'll be watching" |
| E.G.'s boyfriend | 1/2/18 | Bungie message | "Her blood is on your hands as well" |
| E.G. | 1/5/18 | Email | Subject line: "Winter is coming"; "Can't stop it" [Reference to Game of Thrones doomsday] |
| E.G. | 2/5/17 | Email | Link to her game performance from the day - shows he's watching her |
| E.G. | 2/5/18 | Email | "Slow, calculated, painful. I hope it was all worth it for a few months of pretending you were happier. I'll be seeing you soon, dear." |
| E.G.'s father | 2/8-9/2018 | Text message | "An eye for an eye" |
| E.G. | 2/13/18 | Email | "Keep running in circles, [E.G.] You aren't getting anywhere." |
| On 2/22/2018, the FBI arrested Jesse Kessler pursuant to an arrest warrant obtained after indictment. | | | |

The characterization of these communications as "increasingly frequent, intimidating, and harassing" is accurate.

UNRESOLVED LEGAL OBJECTIONS TO THE PSR

Under U.S.S.G. § 2A6.2(b)(1)(E), the base offense level should be increased by two points for "a pattern of activity involving stalking, threatening, harassing, or assaulting of the same victim."  The Application Notes define "pattern of activity involving stalking, threatening, harassing, or assaulting the same victim" as "any combination of two or more separate instances of stalking, threatening, harassing, or assaulting the same victim." U.S.S.G. § 2A6.2, cmt. n. 1. The Application Notes also state, "In determining whether subsection (b)(1)(E) applies, the court shall consider, under the totality of the circumstances, any conduct that occurred prior to or during the offense." U.S.S.G. § 2A6.2, cmt. n.3.

The Defendant admitted in his plea agreement that the course of conduct comprising his offense of conviction lasted between June 2017 and February 2018. [R. 26: Plea Agreement at

4

¶ 3(b).]  He further admitted that during this time, the communications "became increasingly frequent, threatening, and intimidating." [*Id.*]  The admission to a date range and the plural, "communications" demonstrates that the Defendant concedes he made at least two instances of stalking, threatening, or harassing communications.

The Defendant argues, though, that the enhancement provides for impermissible double counting, because the statute of conviction requires a pattern of activity that involves two or more instances of stalking, threatening, or harassing communications, due to its use of the phrase "course of conduct".  This argument fails for two reasons.

"'[D]ouble counting occurs when precisely the same aspect of the defendant's conduct factors into his sentence in two separate ways.'  But no double counting occurs if the defendant is punished for distinct aspects of his conduct." *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010) (quoting *United States v. Moon*, 513 F.3d 527, 542 (6th Cir. 2008)).  Since only two factors contributed to the Defendant's offense calculation – the base offense level and the pattern-of-activity enhancement – the Defendant must be arguing that these two provisions punish the same conduct.

Section 2A6.2 applies to convictions under 18 U.S.C. §§ 2261 through 2262, interstate domestic violence (18 U.S.C. § 2261), interstate stalking (18 U.S.C. § 2261A), and interstate violation of a protective order (18 U.S.C. § 2262).  The base offense level punishes a defendant for violating these statutes regardless of whether he engaged in a pattern of activity. The enhancement only applies when the defendant's instances of criminal conduct combine to generate a "pattern or activity".  Thus, the enhancement punishes a different aspect of his conduct than the base offense level, and no double counting occurred.

The First Circuit considered this issue under a similar context. In *United States v. Fiume*, 708 F.3d 59 (1st Cir. 2013), the Defendant had been convicted of violating 18 U.S.C. § 2262(a)(1),

5

(b)(5), which "criminalizes interstate travel with the intent to engage in conduct that transgresses a court-imposed protection order." *Id.* at 61. The district court applied a two-level enhancement under U.S.S.G. § 2A6.2(b)(1)(A), because the offense "involved the violation of a court protection order." *Id.* The defendant argued that the application of the base offense level under U.S.S.G. § 2A6.2 and the two-level upward adjustment under § 2A6.2(b)(1)(A) constituted impermissible double counting. *Id.* The Court disagreed, for two principal reasons. *Id.* at 62.

First, the Guidelines do not proscribe the use of the two-level upward adjustment. "Courts ordinarily should interpret and apply the guidelines as written, and the Sentencing Commission has not been bashful about explicitly banning double counting in a number of instances. . . . Given the Commission's proclivity for indicating when double counting is forbidden, we are reluctant to infer further such instances out of thin air." *Id.* (internal quotations omitted). Here, the Application Notes explicitly state that the court should consider "any conduct that occurred . . . *during* the offense" in determining whether § 2A6.2(b)(1)(E) applies, suggesting that the enhancement is applicable even if already considered in the underlying offense of conviction. U.S.S.G. § 2A6.2 cmt. n. 3. (emphasis added). Moreover, the Application Notes instruct that even after § 2A6.2(b)(1) is applied, if the district court concludes that the enhancement "does not adequately reflect the extent or seriousness of the conduct involved," then "an upward departure may be warranted." U.S.S.G. § 2A6.2, cmt. n. 5. The Application Notes provide as the example for when an upward departure is warranted, where "the defendant stalked the victim on many occasions over a prolonged period of time." *Id.*

Second, the base offense level covers three criminal violations, only one of which contained as an element a court protective order.

> The most logical conclusion, therefore, is that the defendant's base offense level accounts for the general nature of the offense of conviction as one of stalking or domestic violence, but does not account specifically for the violation of a

6

>court protection order; the two-level upward adjustment under USSG § 2A6.2(b)(1)(A) bridges the gap and accounts for this feature of the defendant's crime. In other words, the presence of section 2262 within USSG § 2A6.2 must be read in light of § 2A6.2(b)(1)(A), which makes available, without limitation, an enhancement for a violation of a protection order. This is an endorsement of the enhancement, not a prohibition. That is single counting, not double counting.

*Id.* The same reasoning should apply to the present enhancement, as the Guidelines do not explicitly prohibit the enhancement to the base offense level under an 18 U.S.C. § 2261A conviction, and neither of the other two statutes include the "course of conduct" language employed in 18 U.S.C. § 2261A.

Even if the base offense level and pattern-of-activity enhancement did constitute double counting, the application of both does not constitute *impermissible* double counting. Where it "appears that Congress or the Sentencing Commission intended to attach multiple penalties to the same conduct," double counting is permitted. *Battaglia,* 642 F.3d at 351. The focus here is not whether the same conduct underlies the base offense level and the enhancement, but whether the Guidelines require the district court to increase the defendant's sentence based on different aspects of the defendant's conduct, which is permissible. *United States v. Kizer*, 517 F. App'x 415, 419 (6th Cir. 2013). Here, the Sentencing Commission revealed its intent to increase a sentence where the defendant engaged in a pattern of stalking, threatening, or harassing conduct, which is separate and distinct from the base offense level application. Thus, any resulting sentence that accounts for the "pattern" of conduct was anticipated, and in fact encouraged, by the Sentencing Commission.

In *United States v. Two Moons*, 486 F. App'x 628, 629 (9th Cir. 2012), the defendant argued that application of the two-level enhancement for U.S.S.G. § 2A6.2(b)(1)(E)[1] for the offense involving "a pattern of activity" constituted impermissible double counting, since the

---

[1] The Court mistakenly cited to U.S.S.G. § 2A6.2(b)(1)(D), but quoted the enhancement language for U.S.S.G. § 2A6.2(b)(1)(E).

statute of conviction relied on the same underlying incidents in the indictment. The Court disagreed, stating that the pattern of assault "could be used to enhance his sentence . . . because the base offense level . . . did not take that pattern into account and did not capture the full extent of the wrongfulness of Two Moons' behavior." *Id.* Similarly here, the base offense level did not take the pattern of stalking activity into account and did not capture the full extent of its wrongfulness.

In sum, the USPO correctly recommended that the court apply the enhancement under U.S.S.G. § 2A6.2(b)(1)(E). The Defendant's Guidelines range is thus properly calculated at 24 to 30 months.

## PROPOSED SENTENCE

A sentence at the top of the guidelines range is appropriate "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

In an age where people can inflict pain, embarrassment, and fear on a deeply troubling level while sitting in front of a computer screen, the seriousness of a cyberstalking offense cannot be understated. The Defendant and E.G. formed a connection on the internet, which blossomed into a romantic relationship spanning years. When that relationship ended, the Defendant exploited the same tools he used to develop his relationship with E.G. to threaten, intimidate, and harass her and her loved ones. He followed her on gaming websites and found her when she switched to new online groups and gaming websites. He sent her text messages and emails; called her; communicated with her online friends; and communicated with her family members and new boyfriend. He wavered between threats of self-harm and threats of harm to others, including a barely veiled warning that he would publish a suggestive photograph of E.G. online. This left E.G. feeling constantly unsettled and fearful.

While the Defendant's lack of criminal history weighs in his favor, his Guidelines range calculation appropriately accounts for his criminal history category. The other § 3553(a) factors support a 30-month sentence. The ease with which he perpetrated this crime and the expansiveness of his harassing behavior suggests that the sentence should carry a specific deterrent value for the Defendant. The need to protect the victim and her family and friends provides an added justification. Finally, the Defendant appears to be in need of some mental health and alcohol abuse treatment, which a term of imprisonment can offer.

## CONCLUSION

For the reasons stated herein, the PSR correctly calculates the Defendant's Guidelines range, and a sentence at the high end of that range is appropriate.

Respectfully submitted,

ROBERT M. DUNCAN, JR.
UNITED STATES ATTORNEY

By:   /s/ Kathryn M. Anderson
Assistant United States Attorney
260 W. Vine Street, Suite 300
Lexington, Kentucky 40507-1612
(859) 685-4885
FAX (859) 233-2747
Kathryn.Anderson@usdoj.gov